NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

AUTO CRANE COMPANY, Respondent.

No. 75–1164.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 13, 1975.

Decided May 3, 1976.

Thomas A. Woodley, Atty., N.L.R.B. (John H. Ferguson, Atty., Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., with him on the brief), for petitioner.

Carl D. Hall, Jr., Hall & Sublett, Tulsa, Okl., for respondent.

Before LEWIS, Chief Judge, and SETH and DOYLE, Circuit Judges.

SETH, Circuit Judge.

This case is before the court upon application of the National Labor Relations Board for enforcement of its order directing respondent, Auto Crane Company, to bargain with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America. The Board's

decision and order, issued November 7, 1974, are reported at 214 NLRB No. 106.

The Union was certified as the bargaining representative of the Company's production and maintenance employees, and on October 1, 1972, the Company and the Union entered into a one-year collective bargaining agreement. On July 31, 1973, the Company filed a petition requesting an election to determine whether the Union still represented the majority of the workers, to which the Union consented. The election was held on September 12, 1973, and resulted in a loss for the Union by a vote of seventeen to fifteen.

Immediately after the election, on September 17, 1973, the Union filed an objection to that election based on a letter sent by the Company to its employees six days prior to the election. That objection was overruled by the Board's Regional Director.

On November 30, 1973, the Union filed charges with the Board alleging the Company violated section 8(a)(5) of the National Labor Relations Act in June 1973 by unilaterally changing the wages and benefits of its employees without bargaining with the Union. On February 14, 1974, the Union filed exceptions to the Regional Director's report on its objection to the election and requested that the Board set aside the September 12th election and direct a new one.

On April 26, 1974, the Regional Director issued the complaint in this case alleging the Company had committed an unfair labor practice in violation of section 8(a)(5) by unilaterally implementing a wage increase in June 1973. After the Board remanded to the Regional Director the proceedings on the Union's objection to the election in consolidation with the unfair labor practice case, the Administrative Law Judge found a violation of section 8(a)(5) in the Company's unilateral wage increase. For this reason as well as the Company's preelection letter to its employees, the judge ruled the election should be set aside and the Company ordered to bargain. The Board adopted the judge's decision without opinion.

It is clear the Board's direction that the September 12th election be set aside is not a final order subject to court review under section 10(e) and (f) and section 9(d) of the Act, and is therefore not now before the court. *See AF of L v. NLRB,* 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; *NLRB v. Lifetime Door Co.,* 390 F.2d 272 at 274 (4th Cir.); *Hendrix Mfg. Co. v. NLRB,* 321 F.2d 100 (5th Cir.). Instead, the issue on appeal is the Board's finding of an unfair labor practice in violation of section 8(a)(5) when the Company unilaterally put into effect a wage increase and a thrift plan while refusing to bargain with the employees' certified representative.

The right of employees to have their employer bargain in respect to rates of pay, wages, hours of employment, or other conditions of employment is clear. 29 U.S.C. § 158(a)(5). A violation of that right under the statute is an unfair labor practice. There is no dispute in the present case that the Union requested the Company to negotiate when the Company announced its plan to implement a wage increase and a thrift plan, and the Company refused.

The Company, while not questioning its basic duty to bargain, argues here that the Union waived its statutory right to bargain in the collective bargaining agreement it signed with the Company. Article 22 of that contract reads:

"22.1 This Agreement is subject to amendment, alteration, or addition only by a subsequent written agreement between and executed by the Company and the Union. The waiver of any breach, term, or condition of this Agreement by either party shall not constitute a precedent in the future enforcement of all these terms and conditions. The parties acknowledged that during the negotiations that resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.

*Therefore, the Company and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waive the right and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement, or with respect to any matter or subject not specifically referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of either or both parties at the time they negotiated or signed this Agreement.*" (Emphasis supplied).

■■ It has been recognized that a Union may relinquish the statutory right to bargain if, as a part of the bargaining process, it elects to do so. *Timken Roller Bearing Co. v. NLRB*, 325 F.2d 746 at 751 (6th Cir.); *NLRB v. Southern Materials Co.*, 447 F.2d 15 (4th Cir.); *General Electric Co. v. NLRB*, 414 F.2d 918 (4th Cir.). These cases require that "only clear and unmistakable language will warrant a conclusion that waiver was intended." 414 F.2d at 923. In *Southern Materials,* language identical to that contained in Article 22's waiver here was held to waive the Company's obligation and the Union's right to bargain as to Christmas bonuses. In that case, there was some question as to whether such bonuses were included in the maintenance of standards clause, which was part of the contract. The phrase in the waiver referring to "any subject or matter not specifically referred to or covered in" the contract was held to apply to the bonuses even if they were not in the maintenance of standards provision. Here, wages were specifically referred to in the agreement, and that subject is exempt from negotiations under Article 22. Although there is no indication that the thrift plan was specifically mentioned in the agreement, the same wording that was held to cover the bonuses in *Southern Materials* appears in Article 22 and applies to the thrift plan.

■ As is pointed out in *Southern Materials,* the Company has no right to act unilaterally as to contract terms and subjects covered by the Article 22 waiver. The Company only has the right to decline the Union's request to negotiate or reconsider them during the life of the agreement. Conversely, the Union could decline a similar request by the Company.

■ The provision in Article 9 of the collective bargaining agreement that " . . . the Company retains the exclusive right to manage the business . . ." should not be read as conferring on the Company the power of unilateral decision as to wages or benefits. *See Leeds & Northrup Co. v. NLRB*, 391 F.2d 874 (3d Cir.).

Since the Board's finding of an unfair labor practice is based solely on the refusal of the Company to bargain and the Union has waived the right to bargain, the order cannot be enforced. The Union by the clear waiver of the right to bargain has traded that remedy for other contractual or legal remedies as it may do. This choice was made and the Union is bound by it.

Enforcement is refused.

LEWIS, Chief Judge, concurs.

WILLIAM E. DOYLE, Circuit Judge, dissents.

WILLIAM E. DOYLE, Circuit Judge (dissenting).

I respectfully dissent.

Once the company unilaterally changed the terms of the contract, the stipulation not to bargain during the life of the agreement was no longer operative and thus the union's efforts to bargain did not constitute a violation of the contract as the majority opinion would in effect hold.

At the most, the question of fact as to whether there had been an effective waiver which covered the instant effort of the union to bargain should be submitted to the Board, for we do not have sufficient wisdom to solve a problem such as this one which we have raised and a problem which is peculiarly the task of the administrative tribunal.